COMMONWEALTH *vs.* EDWARD J. LYNCH.

Essex.   November 5, 1895. — November 26, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Intoxicating Liquors — Conduct of Defendant sufficient to justify Conviction.*

A defendant may be convicted on a complaint charging him with illegally keeping intoxicating liquors with intent to sell the same, if his conduct when the house in which he lived was visited by officers with a search-warrant was such as to warrant an inference that the liquors found secreted in the building were kept by him for unlawful sale.

COMPLAINT, charging the defendant with illegally keeping intoxicating liquors with intent to sell the same, at Marblehead, on April 14, 1894.

At the trial in the Superior Court, before *Lilley*, J., there was evidence tending to show that on and prior to the above date one Bridget White, whose daughter was the wife of the defendant, illegally sold liquor in a house situated on premises distant about one hundred yards from the house in which the defendant lived; that on and prior to that date the said White also kept a grocery store on her premises; that, on January 6, the defendant and his wife were seen to come from the house in which he lived, and while he entered the store his wife entered the house; that the defendant was carrying a basket containing a newspaper, but the witness could not say whether there was anything under the newspaper or not; that, on January 14, the defendant with a can in his hand came from the house in which he lived and entered the store; that, on April 6, the defendant was seen passing about half a dozen times between the house in which he lived and the premises of said White; that on several other occasions the defendant was seen passing to and from said premises, sometimes carrying something under his coat; that, on April 4, the wife of the defendant was seen coming from the house in which the defendant lived and the premises of said White; that White was not seen going to and from the house in which the defendant lived; that, on January 9, an expressman was seen to carry a package covered with paper, resembling a five-gallon keg,

into the yard of the house in which the defendant's family and three other families lived; that the said expressman then went into the grocery store of White, carrying his delivery-book with him; that a son of White was seen to go behind the counter, and the expressman to go up to the counter and come out in a minute or two; that, on March 28, a driver of the American Express stopped at White's store, went in with his receipt-book, was gone a minute or two, and then drove to the house where Lynch lived, took a two or three gallon jug into the yard of the house, but did not take his delivery-book; that, on January 13 or 14, an expressman was seen to stop his pung at the house, and take a keg into the yard, and come out and enter White's store; that as he was driving away some one whistled, whereupon the expressman turned around and drove back; that the defendant said something, and the expressman was heard to say, "I'll come back"; that the expressman then drove to the house where the defendant lived, and the defendant then brought out of the yard and gave to the expressman a jug and a keg; that on none of these occasions was the expressman seen to enter the tenement occupied by the defendant, and that he might have gone into the tenements of the other occupants of the house; that, on April 14, certain officers with a search-warrant visited the two and a half story dwelling-house wherein the defendant's family and three other tenants lived, in the end of which there was a common entrance for all the tenants; that the defendant's tenement was locked; that an officer went to White's house and found the defendant there; that the officer there heard some one ask for a key; that the defendant went with the officer and unlocked a tenement on the lower floor, in which the defendant lived; that nothing was found there except two decanters of wine, which the Commonwealth did not claim to have been illegally kept; that the tenement directly over the tenement of the defendant was occupied; that the officers then ascended two flights of stairs in hallways which were common to the several tenants, the defendant following with a lighted lamp; that from the hallway at the head of the second flight of stairs, which hallway ran the full length of the house, with a stairway reaching the same at either end and common to all tenants, there were doors leading into four attic rooms, locked; that an officer

asked the defendant for a key to a room next the head of the stairs; that he said he had no key, but subsequently said that he guessed he had a key which would fit it, and unlocked the door with a key which he took from his pocket; that the room contained a trunk which was admitted to be the defendant's; that one of the officers testified that the defendant said to him that these rooms " belonged to Mrs. Cahoon "; that in the ceiling over the hallway, near the head of the stairs coming from the part of the house in which the tenement occupied by the defendant was situated, was an opening or scuttle into an unfinished space under the roof; that after coming out of the room just referred to, one officer mounted on the back of another, opened the scuttle and passed through the scuttle, and that immediately the defendant went down stairs, taking the lighted lamp with him, leaving the officers in darkness except for a candle which they then lighted; and that in the space into which the scuttle opened there were found four and a half gallons of whiskey and a gallon and a half of rum, in three jugs.

It appeared that the defendant told the officers that he had nothing to do with any part of the building other than the tenement on the lower floor and the single room in the attic, and that the other rooms in the attic were occupied by the three other tenants.

The defendant asked the judge to rule that there was not sufficient evidence upon which to submit the case to the jury. The judge declined so to rule, but submitted the case to the jury with appropriate instructions, which were not objected to; and the jury returned a verdict of guilty. The defendant alleged exceptions.

*H. F. Hurlburt & E. T. McCarthy*, for the defendant.

*W. H. Moody*, District Attorney, for the Commonwealth.

KNOWLTON, J.   The defendant's conduct when the house in which he lived was visited by officers with a warrant to search for intoxicating liquors was such as to warrant an inference that the liquors found secreted in the building were kept by him for unlawful sale. When they visited the attic rooms and were about to search the room near the place where the liquors were subsequently found, he said at first that he had no key that would unlock the door, but soon afterwards he took a key from

his pocket and unlocked it. The room contained a trunk which was admitted to be his. There was testimony that he said to one of the officers that these rooms "belonged to Mrs. Cahoon." There was other testimony that he admitted that this single room was his, and said that the three other attic rooms belonged to other tenants. In a hallway common to all the tenants there was a scuttle, near the head of the stairs coming from the part of the building occupied by the defendant, which opened into an unfinished space under the roof. After coming out of the defendant's attic room, in his company, one of the officers mounted upon the back of another, opened this scuttle, passed through it, and found four and a half gallons of whiskey and a gallon and a half of rum, in three jugs. As the officers started to open the scuttle, the defendant went down stairs, carrying the lighted lamp with him, and leaving the officers in darkness except for a candle which they then lighted. The jury might well consider these circumstances as indicating guilty knowledge. There were many other circumstances in evidence which tended to show that this place was used by the defendant and his wife as a storehouse for liquors to be sold by his wife's mother, who was selling liquors unlawfully in a place near by. The case was rightly submitted to the jury. *Exceptions overruled.*